UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC M. JEFFRIES, | : | |
| | : | |
| Plaintiff | : | No. 3:11-CV-2002 |
| | : | |
| vs. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | (Judge Nealon) |
| ACTING COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant | : | |

FILED
SCRANTON
MAR 28 2013
PER _____
DEPUTY CLERK

## **MEMORANDUM**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Eric Jeffries' claim for supplemental security income ("SSI") benefits. Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income.

Plaintiff protectively filed an application for SSI on September 29, 2009, alleging disability since October 10, 1989, his date of birth, due to cerebral palsy, depressive disorder, and carpal tunnel syndrome. (Tr. 91-97, 131). After his request for benefits was denied at the initial level, he filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 74-78, 80). A hearing was held on April 6, 2011, which resulted in a decision, unfavorable to Plaintiff, being issued on May 11, 2011. (Tr. 8-21, 49-71). Plaintiff then requested review by the Appeals Council which, by Notice of Action dated August 31, 2011, declined review, making the decision of the ALJ final. (Tr. 1-5). The present appeal followed. (Doc. 1). On

1

May 2, 2012, Plaintiff filed a brief in support of his appeal. (Doc. 11). The Government filed an opposing brief on May 31, 2012. (Doc. 12). The matter is ripe for disposition and, for the reasons that follow, the decision of the Commissioner will be affirmed.

Plaintiff was born on October 10, 1989, and at all times relevant to this matter was considered a "[y]ounger person"[1] whose age does not seriously affect his ability to adjust to other work. 20 C.F.R. § 404.1563(c); (Tr. 20-21, 91). He was diagnosed with cerebral palsy in 1991 when he was 2½ years old. (Tr. 186). Plaintiff was born premature, had developmental delays, tightness in his lower extremities, and was diagnosed with alternating esotropia. (Tr. 186). Plaintiff graduated from high school and has no past relevant work experience. (Tr. 20, 54).

**Standard of Review**

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the Court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's

---

1. The Social Security regulations state that a person age fifty (50) or younger is classified as "[y]ounger person." 20 C.F.R. § 404.1563(c).

findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d

at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920;

4

Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and, (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four, the administrative law judge must determine the claimant's residual functional capacity. Id.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

At step one of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful work activity since September 29, 2009, the application date. (Tr. 13).

At step two, the ALJ found that Plaintiff has the severe impairments of cerebral palsy with history of spastic diplegia, major depressive disorder, and anxiety disorder. (Tr. 13). The ALJ then found, at step three, that Plaintiff's impairments did not individually or in combination meet or equal a listed impairment. (Tr. 14-16).

5

At step four of the sequential evaluation process, the ALJ found that Plaintiff has no past relevant work. (Tr. 20). The ALJ then determined that Plaintiff has the residual functional capacity to perform a range of light work. (Tr. 16). Specifically, the ALJ found that Plaintiff could perform light work with standing/ walking four hours per eight hour workday. (Tr. 16). He would be limited to occasional balancing, stooping, crouching, kneeling, and climbing of ramps and stairs, and would require handrails. He would never be able to use ladders, ropes or scaffolds. He could never crawl and he must avoid concentrated exposure to temperature extremes of hot and cold, humidity, wetness, fumes, odors, gases, dusts, poor ventilation, and vibrations, and he can only have moderate exposure to hazards such as moving machinery and unprotected heights. He is also limited to simple, routine tasks, in a low stress environment, which is defined as occasional decision making and occasional changes in the work setting, and working with things rather than people. (Tr. 16).

At step five, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff could perform, such as a surveillance system monitor. (Tr. 20-21).

**Medical Evidence**

On November 11, 1991, when Plaintiff was 2½ years old, he was treated by Kenneth W. Lilik, M.D. (Tr. 186-87). Dr. Lilik diagnosed spastic diparetic cerebral palsy, alternating esotropia with subsequent strabismus surgery, and developmental delays. (Tr. 186).

Plaintiff attended Weatherly Area School District. He was a special education student and had an individualized education program ("IEP") in place. (Tr. 167-85).

Plaintiff regularly treated at the Shriners Hospital for Children in Philadelphia. (Tr.

6

202-94). He was prescribed molded ankle-foot orthotics ("MAFO") to help him with balance and walking. (Tr. 209). However, Plaintiff reported that he was able to walk better and longer without the braces. (Tr. 209). Plaintiff also reported to doctors that he was unable to run, but he was able to ambulate without any assistive devices. (Tr. 227). Many treatment notes from 1995 through 2004 indicate that Plaintiff was "doing very well" overall, was very active, functional, has a social life, and did not have any difficulties. (Tr. 208-11, 215, 217, 222-23, 225, 228).

In 2007, Plaintiff underwent a calcaneal osteotomy with split tibialis anterior transfer and gastrocnemius lengthening and hamstring lengthening on the right side. (Tr. 288). He had normal sensation on the dorsal aspect of the foot, but decreased sensation on the plantar aspect of the foot. (Tr. 288). Plaintiff reported that his foot anticus transfer was working "beautifully", his foot was perfectly plantigrade, and he could wear normal footwear without braces or orthotics. (Tr. 290).

In December 2008, Plaintiff suffered a panic attack at school and was treated at Northeast Counseling Services. (Tr. 312-20). He was diagnosed with a depressive disorder and assessed a Global Assessment of Functioning ("GAF") score of 60.[2] (Tr. 318). Plaintiff continues to treat at Northeast Counseling services. (Tr. 382-89). He was hospitalized twice in November 2010 for suicidal ideation. (Tr. 385, 387). Plaintiff's mother recommended that he attend a Partial Hospital Program. Treatment notes indicate that Plaintiff's mood was dysphoric, euthymic, he had a restricted affect, limited insight, fair impulse control, no

---

2. A GAF score of 51-60 indicates "[m]oderate symptoms OR any moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders, 4th edition, Text Revision (2000).

suicidal or homicidal ideations, plans or hallucinations. (Tr. 388-89). He was continually assessed GAF scores of 60. (Tr. 382-89).

Plaintiff treated with optometrist, David L. Naugle, O.D., in June 2009. (Tr. 190-201). Plaintiff reported that he had mild difficulty with his vision. (Tr. 194). Dr. Naugle stated that, regarding Plaintiff's vision, he "was good." (Tr. 194).

In 2009, Plaintiff completed an Employment Planning Application for the Office of Vocational Rehabilitation. (Tr. 155-64). He stated he was interested in working as technical support, computer programmer, network administrator, novelist, technical writer, chef, baker, medical imaging and pharmacy. (Tr. 160). Plaintiff indicated that his doctor/ therapist/ psychiatrist supported his desire to return to work. (Tr. 160).

February 2011 treatment notes from Northeast Counseling Services indicate that Plaintiff attends a Partial Hospital Program five (5) days per week. (Tr. 382). He was diagnosed with major depressive disorder (recurrent), generalized anxiety disorder, cerebral palsy, ambulatory dysfunction, spastic muscle, and a GAF score of 60 was assessed. (Tr. 382-89).

On March 22, 2011, Mitchell J. Gross, M.D., performed a neurological exam and noted that Plaintiff had mild gait dysfunction related to cerebral palsy, his left leg is stronger than the right, he had a history of depression and generalized/ social anxiety disorder, and he recommended that Plaintiff avoid dopamine depleting medications to minimize the effect on his gait. (Tr. 390-95).

**Discussion**

Plaintiff argues that the ALJ erred in determining that he did not have an impairment

that met the listing level severity, and erred in her residual functional capacity determination. (Doc. 11).

*A. Listing Level Severity*

Plaintiff first argues that the ALJ erred in determining that he did not have an impairment of listing level severity. (Doc. 11, pg. 5). To qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equal in severity to all the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed. 2d 967 (1990).

Plaintiff argues that he meets Listing 11.07B, cerebral palsy. (Doc. 11, pg. 6). To meet Listing 11.07B, Plaintiff must prove that he suffers from cerebral palsy with "[a]bnormal behavior patterns, such as destructiveness or emotional instability." 20 C.F.R. part 404, subpart P, app. 1, § 11.07B. Plaintiff states that he has undergone several surgeries to mitigate his cerebral palsy, he attends a partial hospitalization program five days per week, he has anxiety which causes him to avoid groups and to avoid being outside alone, he has suicidal thoughts, and he was hospitalized for six days in November 2010 due to suicidal thoughts. (Doc. 11, pgs. 6-7). Events that cause him anxiety are thinking about doctor's appointments, school, cooking, and social interactions. (Doc. 11, pg. 6). Plaintiff therefore argues that he meets the listing requirements. (Doc. 11, pg. 7).

The Government argues that the treatment notes indicate that although Plaintiff suffers from depression and has received treatment for it, he is doing well, his medication is helping, and he was assessed GAF scores of 60. (Doc. 12, pg. 11). The Government also states that

9

Plaintiff's mother recommended that he attend a partial hospitalization program, not his psychiatrist. (Doc. 12, pg. 12). Further, the Government states that Plaintiff does not argue that he is physically incapable of working as a surveillance system monitor, but that due to his cerebral palsy and alleged abnormal behavior patterns, he should be found to be presumptively disabled. (Doc. 12, pg. 12).

The ALJ determined that Plaintiff's cerebral palsy is a severe impairment, but his impairments do not meet or equal any of the listed impairments. (Tr. 14). The ALJ reviewed Listing 11.07 and determined that Plaintiff has not presented evidence to support a finding that he meets the listing requirements. (Tr. 14). Additionally, the ALJ noted that Plaintiff did not allege that his impairments meet listing level severity. (Tr. 14). As stated, in order to meet Listing 11.07B, Plaintiff must prove that he suffers from cerebral palsy with "[a]bnormal behavior patterns, such as destructiveness or emotional instability." 20 C.F.R. part 404, subpart P, app. 1, § 11.07B. The ALJ considered the evidence of record and adequately determined that Plaintiff did not meet his burden of presenting evidence that he meets Listing 11.07B.

The ALJ thoroughly reviewed Plaintiff's mental impairments pursuant to Listings 12.04 and 12.06. (Tr. 14-16). Under the B criteria of Listings 12.04 and 12.06, the ALJ determined Plaintiff has a mild restriction in activities of daily living, moderate difficulty in social functioning, moderate difficulty with concentration, persistence or pace, and no episodes of decompensation. (Tr. 14-15). The ALJ found that Plaintiff's impairments did not meet the C criteria of the Listings because he has not demonstrated a complete inability to function independently outside the home. (Tr. 15).

Upon review, substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet listing level severity.

*B. Residual Functional Capacity*

Plaintiff next argues that the ALJ incorrectly determined that he had the residual functional capacity to perform light work. (Doc. 11, pg. 7). Specifically, Plaintiff argues that he is unable to concentrate and stay on-task and he has to read sentences three times to comprehend the material. (Doc. 11, pg. 7). Plaintiff also notes that he missed 104 days of school between October 6, 2006 and May 22, 2009. (Doc. 11, pg. 7). The vocational expert testified that an individual similar to Plaintiff could not perform sedentary work if he were off-task more than 20% of the day. (Tr. 70).

As part of step four of the sequential evaluation process, the administrative law judge must determine the claimant's residual functional capacity. Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475. A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

In Burnett v. Commissioner of Social Security, 220 F.3d 112 (3d Cir. 2000), the Court of Appeals for the Third Circuit stated: "In making a residual functional capacity

11

determination, the ALJ must consider all evidence before him. . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Id. at 121 (internal citations and quotations omitted). RFC refers to what a plaintiff can do despite her limitations. 20 C.F.R. § 404.1545(a). In determining the plaintiff's RFC, the ALJ must consider all relevant evidence, including the medical evidence of record and the plaintiff's subjective complaints. 20 C.F.R. § 404.1545(a). At the hearing level, the responsibility for determining a plaintiff's residual functional capacity is reserved for the ALJ. 20 C.F.R. § 404.1546. The final responsibility for determining the RFC is reserved for the Commissioner, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 404.1527(e)(2), (3).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms but that his statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment. (Tr. 17). The ALJ gave significant weight to the opinions of Dr. Anthony Galdieri and Dr. Anne C. Zaydon. (Tr. 19). The ALJ's reliance on these opinions was appropriate. See Chandler v. Commissioner of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) ("Having found that [] [the state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence").

Dr. Galdieri completed a Psychiatric Review Technique Form and a Mental Residual

Functional Capacity Assessment Form on January 13, 2010. (Tr. 343-58). Dr. Galdieri diagnosed major depressive disorder. (Tr. 346). He noted that Plaintiff had moderate limitations in the ability to maintain attention and concentration for extended periods, the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to respond appropriately to changes in the work setting. (Tr. 356-57). The ALJ added additional limitations to Dr. Galdieri's opinion regarding Plaintiff's anxiety. (Tr. 19).

On March 24, 2010, Dr. Zaydon completed a Physical Residual Functional Capacity Assessment form and diagnosed Plaintiff with cerebral palsy. (Tr. 375-81). Dr. Zaydon concluded that Plaintiff can occasionally lift and/ or carry twenty pounds and frequently lift and/ or carry ten pounds; he can stand and/ or walk and sit for six hours in an eight-hour workday; he can frequently stoop, occasionally use ramps and stairs, occasionally balance, kneel, crouch and crawl; he can never use ladders, ropes or scaffolds, and never crawl; he should avoid concentrated exposure to extreme cold, heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation; and, he should avoid even moderate exposure to hazards such as machinery and heights. (Tr. 377). Dr. Zaydon concluded that Plaintiff is capable of performing light work, but the ALJ added additional limitations of only occasionally stooping and that he must use handrails. (Tr. 19).

As stated, the ALJ determined that Plaintiff has the residual functional capacity to perform a range of light work. (Tr. 16). The ALJ found that Plaintiff could perform light work with standing/ walking four hours per eight hour workday; he is limited to occasional

13

balancing, stooping, crouching, kneeling, and climbing of ramps and stairs, and would require handrails; he could never use ladders, ropes or scaffolds; he could never crawl; he must avoid concentrated exposure to temperature extremes of hot and cold, humidity, wetness, fumes, odors, gases, dusts, poor ventilation, and vibrations; he can only have moderate exposure to hazards such as moving machinery and unprotected heights; and, he is limited to simple, routine tasks, in a low stress environment. (Tr. 16).

No treating or examining physician has stated that Plaintiff suffers from physical functional limitations that would preclude him from engaging in the limited range of light work set by the ALJ in her decision for the requisite statutory 12 month period. The ALJ determined that Plaintiff is capable of performing the job of a surveillance system monitor, which is an unskilled, sedentary job.[3] (Tr. 20-21). No physician indicated that Plaintiff is incapable of working at that modest level on a full-time basis.

Substantial evidence supports the ALJ's determination as to Plaintiff's RFC and Plaintiff's argument to the contrary will be rejected.

Upon review of the administrative record, the decision of the Commissioner is

---

3. The term sedentary work is defined in the Social Security Administration Regulations as follows:

> (a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567 and 416.967.

supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be affirmed. An appropriate order follows.

_____
**United States District Judge**

**Dated:** March 28, 2013